JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Robert Cochran ("defendant"), appeals, pro se, the court's denial of various postconviction motions relating to his pleading guilty to murder and aggravated robbery. After reviewing the facts of the case and pertinent law, we affirm.
 {¶ 2} On August 23, 2006, defendant pled guilty to murder in violation of R.C. 2903.02(B) and aggravated robbery in violation of R.C. 2911.01(A)(1).[1] That same day, the court imposed an agreed upon sentence of 15 years to life in prison for murder and three years in prison for aggravated robbery, to run consecutively, for an aggregate sentence of life in prison with the possibility of parole after 18 years.
 {¶ 3} Defendant did not directly appeal the merits of his case; however, after being sentenced, defendant filed, pro se, various postconviction motions, including a motion to withdraw his guilty plea, a postconviction collateral petition, and an amended/supplemented petition for postconviction relief.[2] The court denied these motions on June 9, 2008, July 1, 2008, and September 10, 2008, respectively. *Page 4 
Defendant timely appealed all three denials, and we consolidated the appeals into the instant case.
 {¶ 4} "I. The trial court erred when it refused to allow the defendant leave to amend/supplement his post-sentence motion to withdraw his guilty plea and his petition for post-conviction relief and further erred when it would not allow the defendant to combine both motions as a single motion to withdraw his guilty plea under Criminal Rule 32.1."
 {¶ 5} We review challenges to a trial court's ruling on motions to amend withdrawal of guilty pleas and petitions for postconviction relief under an abuse of discretion standard. See State v. Archer (Apr. 27, 1999), Muskingum App. No. 98CA33.
 {¶ 6} On May 20, 2008, defendant filed his amended/supplemented petition for postconviction relief; therefore, this assignment of error does not pertain to that motion. Although the court denied defendant leave to file his amended/ supplemented motion to withdraw guilty plea on April 16, 2008, that motion is a carbon copy of the May 20, 2008 motion, which is part of the record. As the court did not deny defendant an opportunity to make any new arguments, defendant suffered no prejudice, and the court did not abuse its discretion.
 {¶ 7} Defendant next argues that the court erred when it failed to allow him to combine "all three of the post-sentence motions to merge into a single Motion to Withdraw Guilty Plea under Criminal Rule 32.1." (Emphasis added.) It is unclear exactly what defendant means by this; however, because the court denied all three *Page 5 
of his motions on their merits, and defendant appealed all three denials in a timely fashion, which appeals were then consolidated into the instant case, we will substantively review all of defendant's arguments that were made on the record in the following assignments of error.
 {¶ 8} Appellant's first assignment of error is overruled.
 {¶ 9} "II. Petitioner should be allowed to withdraw his guilty plea because he was misinformed about being subject to post-release control if released, in violation of the constitutional protections contained in Criminal Rule 11(C)."
 {¶ 10} "III. Petitioner's guilty plea was not made knowingly, intelligently or voluntarily because trial counsel coerced petitioner to plead guilty by using scare tactics and leading him to believe he was guilty of aggravated murder just for being present at the scene of the crime."
 {¶ 11} "IV. Petitioner's guilty plea was not made knowingly, intelligently or voluntarily because the trial court failed to comply with the due process protections contained in Criminal Rule 11(C), et seq."
 {¶ 12} R.C. 2953.21 governs petitions for postconviction relief, and it states, in pertinent part:
 {¶ 13} "(A)(1)(a) Any person who has been convicted of a criminal offense *** and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States *** may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or *Page 6 
set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief."
 {¶ 14} Petitions for postconviction relief allow for a narrow class of constitutional errors, and the claim must depend on allegations which cannot be determined by an examination of the record alone. SeeState v. Steffen, 70 Ohio St.3d 399, 1994-Ohio-111; State v.Thompson (Jun. 11, 1998), Cuyahoga App. No. 72641.
 {¶ 15} The Ohio Supreme Court has held that the doctrine of res judicata will determine whether postconviction relief should be given under R.C. 2953.21. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from the judgment." State v. Ishmail (1981), 67 Ohio St.2d. 16, 18, quotingState v. Perry (1967), 10 Ohio St.2d 175, at syllabus. We review a trial court's denial of a petition for postconviction relief under a de novo standard. State v. Turner, Scioto App. No. 01CA2786, 2001-Ohio-2636.
 {¶ 16} In the instant case, defendant sets forth three grounds for postconviction relief: 1) That the court misinformed him about postrelease control; 2) That his attorney misinformed him about the charges against him and "scared" him into pleading guilty; and 3) That the court failed to comply with Crim. R. 11(C) when *Page 7 
accepting his guilty plea. In denying defendant's petition for postconviction relief, the trial court found that defendant could have raised these issues at trial or on direct appeal; however, as he failed to do so, his claims were barred by the doctrine of res judicata.
 {¶ 17} As stated earlier, defendant did not take a direct appeal in the instant case. After reviewing the record, we find that, had defendant appealed, he could have raised these three arguments at that time. "A Crim. R. 11(C) violation that appears on the face of the record but is never directly appealed is not per se susceptible to collateral attack by way of a postconviction proceeding pursuant to R.C. 2953.21. Under the doctrine of res judicata the Crim. R. 11(C) question merged with the judgment of conviction and defendant cannot now relitigate the issue." Ishmail, supra, at 18. Accordingly, the court did not err when it denied defendant's postconviction relief petition on September 10, 2008, and his amended/supplemented postconviction relief petition on June 9, 2008.
 {¶ 18} We now analyze defendant's arguments under the standard for a motion to withdraw guilty plea. Crim. R. 32.1 governs motions to withdraw guilty pleas, and it states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Accordingly, a defendant who moves to withdraw a guilty plea after sentence has been imposed bears the additional burden of demonstrating manifest injustice. State v. Smith (1977), 49 Ohio St.2d 261. Manifest injustice is "a *Page 8 
fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her."State v. Sneed, Cuyahoga App. No. 80902, 2002-Ohio-6502. We review a court's denial of a postsentence motion to withdraw guilty plea for an abuse of discretion. State v. Makupson, Cuyahoga App. No. 89013,2007-Ohio-5329.
 Misinformation regarding postrelease control. {¶ 19} The underlying purpose of Crim. R. 11(C) is for the court to give enough information to a defendant to allow him to make an intelligent, voluntary, and knowing decision of whether to plead guilty. See State v. Ballard (1981), 66 Ohio St.2d 473. Courts have divided Crim. R. 11 rights into constitutional and nonconstitutional rights. Concerning the constitutional rights, courts must strictly comply with Crim. R. 11 mandates; for the nonconstitutional rights, the standard is substantial compliance. State v. Stewart (1977), 51 Ohio St.2d 86. In the instant case, defendant alleges that the court misinformed him about postrelease control, and, had he known that postrelease control would be part of his sentence, he would not have pleaded guilty. Crim. R. 11(C)(2)(a) requires the courts address a defendant personally and determine that he or she "is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved ***." This is a nonconstitutional right, and we review alleged errors for substantial compliance. See State v. Nero (1990),56 Ohio St.3d 106, 107. *Page 9 
 {¶ 20} "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show prejudicial effect. The test is whether the plea would have otherwise been made." (Internal citations omitted.) Nero, supra at 108.
 {¶ 21} The Ohio Supreme Court recently held that if a trial court failed to mention a mandatory period of postrelease control — which falls under the category of "maximum penalty involved," as it is part of defendant's sentence — at the plea hearing, the plea must be vacated.State v. Sarkozy, 117 Ohio St.3d 86, 2008-Ohio-509. However, if the trial court partially complied with the rule, for example by incorrectly explaining postrelease control, an appellate court may only vacate the plea if the defendant makes a showing of prejudicial effect. SeeState v. Clark, 119 Ohio St.3d 239, 2008-Ohio-3748.
 {¶ 22} In the instant case, the following colloquy took place at defendant's plea hearing:
 {¶ 23} "THE COURT: You are not eligible for probation or community control sanctions. In fact, you will go to jail and upon release from jail you will be placed on what they call post release control, PRC, Mr. Cochran, for 5 years. There will be certain terms and conditions you will follow. If you choose to violate those terms and conditions, they can incarcerate you, sir.
 {¶ 24} "Do you understand that? *Page 10 
 {¶ 25} "THE DEFENDANT: Yes."
 {¶ 26} The court properly informed defendant that five years of postrelease control would be part of his sentence for the aggravated robbery conviction, which is a first degree felony. See R.C. 2967.28(B)(1). Defendant also pled guilty to murder, an unclassified felony to which the postrelease control statute does not apply. Rather, defendant will be eligible for parole after serving 18 years in prison. R.C. 2967.13(A)(1). In Clark, supra, at 246, the Ohio Supreme Court delineated the difference between postrelease control and parole, as applied to Crim. R. 11 guilty plea hearings:
 {¶ 27} "Parole is also a form of supervised release, but it is not merely an addition to an individual's sentence. When a person is paroled, he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release. R.C. 2967.02(C); 2967.13(E); 2967.15(A); 2967.16(C)(1). If a paroled person violates the various conditions associated with the parole, he or she may be required to serve the remainder of the original sentence; that period could be more than nine months. Ohio Adm. Code 5120:1-1-19(C).
 {¶ 28} "Even after a prisoner has met the minimum eligibility requirements, parole is not guaranteed; the Adult Parole Authority `has wide-ranging discretion in parole matters' and may refuse to grant release to an eligible offender. Layne v. Ohio Adult Parole Auth.,97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28; State ex rel.Hattie v. Goldhardt, 69 Ohio St.3d 123, 125, 1994-Ohio-81, *Page 11 630 N.E.2d 696. Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim. R. 11 colloquy. See Hill v. Lockhart (1985), 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203."
 {¶ 29} Therefore, the trial court properly omitted discussion of parole at defendant's plea hearing. As the court properly conducted defendant's plea hearing concerning postrelease control and parole, defendant is unable to show a manifest injustice.
 Trial counsel's defective advice. {¶ 30} Defendant argues that his "plea was not made knowingly, intelligently or voluntarily when counsel was ineffective by coercing him to plead guilty by using scare tactics and falsely leading him to believe that he was guilty of aggravated murder just for being present at the scene of the crime." To support this argument, defendant provided his own affidavit and an affidavit from his mother, both stating that defense counsel told him to plead guilty to murder and robbery with an agreed sentence of 18 years to life in prison, rather than go to trial for aggravated murder, among other charges, and face the death penalty. According to defendant and his mother, defense counsel scared defendant into taking this plea, insisting that he would be tried for a capital crime for, as defendant puts it, "just being there."
 {¶ 31} The record is clear that defendant was indicted for aggravated murder in violation of R.C. 2903.01(A), with a felony murder and firearm specifications. Pursuant to R.C. 2929.02(A), "[w]hoever is convicted of or pleads guilty to aggravated murder in violation of section 2903.01 of the Revised Code shall suffer *Page 12 
death or be imprisoned for life ***." Defendant's plea hearing was held on Wednesday, August 23, 2006, and at that hearing, the court told defendant that his "capital murder case" was scheduled for trial the following Monday.
 {¶ 32} Furthermore, the United States Supreme Court has held that "Ohio law considers aiders and abettors equally in violation of the aggravated murder statute, so long as the aiding and abetting is done with the specific intent to cause death." Bradshaw v. Stumpf (2005),545 U.S. 175, 184, citing In re Washington (1998), 81 Ohio St.3d 337 andState v. Scott (1980), 61 Ohio St.2d 155, 165.
 {¶ 33} Additionally, in State v. Johnson, 93 Ohio St.3d 240, 245-246,2001-Ohio-1336, the Ohio Supreme Court held that "to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." The Johnson Court also held that"participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." (Internal citations omitted; emphasis added.) Id. at 245.
 {¶ 34} Accordingly, there is no evidence that defendant's counsel gave him defective advice or coerced him into pleading guilty. See Brady v.United States (1970), 397 U.S. 742, 755 (holding that "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty").
 Court's failure to comply with Crim. R. 11(C). *Page 13 {¶ 35} Defendant's final argument regarding his guilty plea is that the court failed to adequately inquire whether he understood the nature of the charges against him. As stated earlier, Crim. R. 11(C)(2)(a) requires that a court must address a defendant personally and determine that he or she "is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved ***." This is a nonconstitutional right, and we review alleged errors for substantial compliance. See Nero, supra. "Crim. R. 11(C)(2) only requires that court to apprise an accused of the nature of the crime charged, not the substantive elements. *** In State v. Ballard (1981),66 Ohio St.2d 473, the court stated: `***We hold that a rote recitation of Crim. R. 11(C) is not required, and failure to use the exact language of the rule is not fatal to the plea. Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to the defendant.'" State v.Durden (May 17, 2001), Cuyahoga App. No. 78068.
 {¶ 36} In the instant case, the court explained to defendant at his plea hearing that he would be pleading guilty to two charges, murder and aggravated robbery. The court then defined those two offenses, explained to defendant the felony classifications and maximum penalties involved, and explained the charges and specifications the state was going to dismiss in exchange for defendant's guilty plea. Finally, the court explained the constitutional rights that defendant was waiving by pleading guilty. After each step in this Crim. R. 11(C) hearing, the court asked defendant if he understood what was just explained to him; in each instance, *Page 14 
defendant answered that yes, he understood. Thus, the court did not err when it determined that defendant's plea was made knowingly, intelligently, and voluntarily, and the court did not abuse its discretion when it denied defendant's motion to withdraw his guilty plea. Defendant's second, third, and fourth assignments of error are overruled.
 {¶ 37} "V. The appellant was denied his state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated when his indictment omitted an element of the offense."
 {¶ 38} Defendant argues that the indictment against him was defective under State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, which held that an indictment for robbery in violation of R.C. 2911.02(A)(2) was defective because it failed to charge the mental state of recklessness as an essential element of the crime.
 {¶ 39} In the instant case, defendant pled guilty to aggravated robbery in violation of R.C. 2911.01(A)(1). This court recently decidedState v. Pond, Cuyahoga App. No. 91061, 2009-Ohio-849, which is dispositive of defendant's fifth assignment of error:
 {¶ 40} "This court has recently declined to extend Colon to cases in which the defendant pled guilty to the indictment. State v. Hayden, Cuyahoga App. No. 90474, 2008-Ohio-6279; State v. Lawrence, Cuyahoga App. Nos. 90977 and 90978, 2009-Ohio-33. We have also rejectedColon's application to cases of aggravated robbery charged under R.C. 2911.01(A)(1). State v. Price, Cuyahoga App. No. 90308, 2008-Ohio-3454; *Page 15 State v. Wade, Cuyahoga App. No. 90145, 2008-Ohio-4870; State v.Peterson, Cuyahoga App. No. 90263, 2008-Ohio-4239."
 {¶ 41} Accordingly, defendant's fifth and final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MARY JANE BOYLE, J., CONCUR.
[1] Defendant was one of four individuals indicted for events that resulted in a fatal shooting on the evening of June 25, 2005. SeeState v. Kincaid, Cuyahoga App. No. 88362, 2007-Ohio-2228.
[2] Defendant also filed a request for leave to amend/supplement his motion to withdraw guilty plea, along with the amended/supplemented motion instanter on April 7, 2008. The court denied his request for leave on April 16, 2008. As will be discussed in defendant's first assignment of error, infra, this motion contained the same arguments alleged in defendant's amended/supplemented petition for postconviction relief, which the court denied on its merits. *Page 1